IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEAMON L. TATUM, #200389<br>　　　Plaintiff,<br>　　v.<br><br>CORRECTIONAL MEDICAL SERVICES<br>　　　Defendant. | *<br><br>*　　CIVIL ACTION NO.  WDQ-09-875<br><br>*<br>*** |

## **MEMORANDUM**

### **I. Procedural Background**

Leamon L. Tatum ("Tatum") is an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland. On April 6, 2009, the Court received for filing his letter Complaint alleging that in 2004 he was prescribed a heavy dose of Atenolol, a "very dangerous" medication. Paper No. 1. He claims that for several months he was "falling unconscious" and that when this occurred on September 1, 2008, he was taken to a hospital. Tatum asserts that he was placed on a heart monitor and learned that his heart was "completely stopping several times per minute." He maintains that Atenolol is a beta blocker that causes an "incurable" condition called "sick sinus syndrome" ("SSS").[1] Tatum states that his condition was diagnosed as SSS and was documented by doctors to be "possibly caused and certainly exacerbated by the Atenolol." He seemingly claims, however, that the Atenolol prescription is to be continued until 2018. Tatum states that per the suggestion of hospital physicians, prison medical staff offered to provide him a pacemaker. Paper No. 1. He

---

[1] Sick sinus syndrome ("SSS") is the name for a group of heart rhythm problems (arrhythmias) in which the sinus node, also known as the heart's natural pacemaker, does not work properly. In SSS the sinus node beats abnormally causing slow heart rate, rapid heart rate, or alternating slow and fast rhythms. *See* www.mayoclinic.com/health/sick-sinus-syndrome.

claims that he does not want the same people that caused his incurable disease to "alter his heart in any way."

The letter was construed as a 42 U.S.C. § 1983 civil rights action and Tatum was ordered to file a supplement to his Complaint so as to name party defendants, provide the precise factual background of his claims against those parties, and to set out a relief request. Paper No. 2. In his court-ordered supplemental Complaint, Tatum named Correctional Medical Services, Inc. ("CMS") as the sole party Defendant and again claimed that in 2004, he was "erroneously" prescribed the "dangerous" drug Atenolol without follow-up testing, and that the large daily doses of the medication caused him to experience bouts of sudden unconsciousness, later diagnosed as SSS and "syncope" in 2008. Paper No. 3.

On July 24, 2009, CMS filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Paper No. 16. On August 6, 2009, Plaintiff filed his Opposition. Paper No. 21. The case is ready for consideration and may be determined on the pleadings without oral hearing. *See* Local Rule 105.6. (D. Md. 2008). For reasons to follow, the CMS dispositive filing, construed as a motion for summary judgment, shall be granted.

## II. Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**III.   Discussion**

    **1.   Facts**

Defendant asserts, by submission of declaration and Plaintiff's medical records, that Plaintiff has received constitutionally adequate medical care. The following information has been provided.

Plaintiff is a sixty-five year old male with a history of schizophrenia, hypertension, right wrist surgery, and high cholesterol. Until his 2008 transfer to ECI he was, at all relevant times,

housed at the Western Correctional Institution in Cumberland, Maryland.[2] CMS acknowledges that Plaintiff was prescribed 100 milligrams of Atenolol per day for his high blood pressure prior to 2005 and states that the medication is commonly used to treat hypertension. Medical staff reduced the Atenolol to 25 mg. per day in March of 2006 when it was determined that Tatum's high blood pressure was under control. Paper No. 16, Exs. A & B. On June 14, 2006, Tatum's heart rate was found to be regular in number of beats, rate and rhythm. Later that year, on September 13, 2006, Dr. Isaias Tessema evaluated Tatum in the Cardiovascular Clinic ("CVC") and found that his high blood pressure was not as controlled as before, but that his heart rate remained regular in rate and rhythm. Tatum was ordered to receive blood pressure checks once a week until October 16, 2006, and to receive an increased Atenolol dosage of 50 mg. per day. According to Defendant, this is not a maximum dose of the medication.

CMS maintains that the daily dose of 50 mg. Atenolol acted to control Tatum's high blood pressure. He was evaluated on April 17 and August 20, 2007, by Nurse Practitioner Hammond and his blood pressure and heart rate and rhythm were found to be within normal limits. On November 13, 2007, Dr. Masoud Djahanmir evaluated Tatum in the CVC and found him to have a regular heart rate and rhythm. On January 29, 2008, Tatum was examined by Dr. Tessema, who found his blood pressure and heart rate and rhythm to be normal and regular. Paper No. 16, Exs. A & B.

Two days later on January 31, 2008, Tatum was taken to the dispensary after falling. He sustained an abrasion to his left knee and fingers of both hands. The medical records indicate that Tatum told Nurse Dianna Harvey that he had been dieting, exercising, and fasting and that he had become dizzy and fell. Harvey indicated that Tatum appeared confused. His blood pressure, pulse,

---

[2] CMS did not provide contractual medical services at WCI before July 1, 2005.

and blood sugar levels were evaluated and all found to be normal. An EKG was performed on February 3, 2008, and showed a regular heart rate. *Id*.

On February 22, 2008, Nurse Rhonda Skidmore evaluated Tatum for his complaints of dizziness and difficulty walking. He complained that he had experienced intermittent bouts of dizziness after an October 7, 2007 assault from another inmate. Tatum informed Skidmore that he had passed out a few times and that on January 31, 2008, he had passed out and fallen outside the dining hall. Skidmore's examination of Tatum found no abnormalities associated with his gait, speech, skin color, and blood pressure. *Id*.

In March of 2008, Tatum requested a medical consult and was called to the dispensary, but did not show up for the consultation. Five days later he filed another sick-call encounter form complaining that he had not been seen for his last sick-call request and was still experiencing dizziness and falling unconscious. He was scheduled to see Dr. Tessema.

On March 20, 2008, Tatum was evaluated by Tessema. He stated that his dizziness worsened when he was "moving around." Tessema observed that Tatum was on psychotropic medications for his mental health condition, noted that the drugs did have a known side effect of dizziness and decreased coordination, and suggested stopping the psychotropic medications to see if they were a causative factor of Tatum's dizziness. Tatum did not wish to stop his psychotropic medications. Tessema informed Tatum to seek medical help if his dizziness reoccurred and indicated that he would order a CT scan if the problem persisted. Paper No. 16, Exs. A & B.

On April 4, 2008, Tatum complained of another dizzy spell. Nurse Hetty Trenum evaluated Tatum and noted that his blood pressure was slightly elevated. No other abnormalities were noted. On May 1, 2008, Tatum was examined by Nurse Practitioner Hammond in the CVC. No complaints

of dizziness were raised. On May 21, 2008, Tatum was transferred to ECI, where his prescription for a daily dose of 50 mg. of Atenolol was continued.

On June 5, 2008, Tatum filed a sick-call request complaining that his ankles were swollen. He was evaluated by Nurse Rebecca Schoolcraft on June 7, 2008. Tatum informed Schoolcraft that he felt dizzy at times and had fallen two weeks before his transfer to ECI. Schoolcraft observed no other abnormalities and referred Tatum to the CVC. On June 23, 2008, Tatum was evaluated by Dr. Ben Oteyza in the CVC. He did not complain about dizziness and Dr. Oteyza observed that Tatum's heart rate was regular in rate and rhythm. On July 23, 2008, Tatum was seen by Physician's Assistant ("P.A.") Bruce Ford for a complaint that he had passed out in the ECI yard that day. Ford's evaluation revealed no abnormalities. He nonetheless ordered blood tests, a skull x-ray, and an EKG. Tatum was referred to a physician to determine whether a CT scan of his head was needed. The EKG was taken and found to be normal.

On August 19, 2008, Tatum filed a sick-call request form complaining that he was still getting dizzy and had fallen down once since seeking the doctor. P.A. Ford evaluated Tatum on August 27, 2008. His blood pressure was found to be normal and his pulse was regular. Another EKG was ordered, performed on September 1, 2008, and showed a heart rate of 46 beats per minute.

On September 1, 2008, Tatum had a dizzy spell, fell down and hit the back of his head. He was taken to a local hospital, the Peninsula Regional Medical Center ("PRMC"), where he was diagnosed with SSS with symptomatic bradycardia (slow heart rate). According to Defendant, Atenolol does not usually cause SSS. Paper No. 16, Exs. A & B. The physicians at the PRMC recommended that Tatum receive a cardiac pacemaker to treat his SSS. Tatum declined to receive the device.

When Tatum returned to ECI two days later he was admitted to the prison infirmary for observation and treatment of a scalp laceration caused by his September 1, 2008 fall. In addition, his Atenolol medication was changed to Norvasc, a calcium channel blocker. On September 4, 2008, Tatum was discharged from the infirmary to his housing unit. Dr. David Mathis, the Regional Medical Director for CMS, placed a note in Tatum's medical chart that beta blockers, such as Atenolol, should not be prescribed to him in the future.[3] On September 29, 2008, Tatum began to complain about headaches. Excedrine Migraine was added to his prescription regimen.

According to the record, Tatum did not complain of dizziness again until November 2008. On November 4, 2008, he complained of headaches and dizziness and on November 9, 2008, he filed a sick-call request complaining of "constant headaches." Dr. Aster Berhane evaluated Tatum on November 17, 2008. Tatum asked Berhane to discontinue his blood pressure medication. Berhane discontinued Tatum's diuretic, hydocholorthiazide ("HCTZ"), which helps to lower blood pressure, but renewed his Norvasc.

On December 19, 2008, Tatum submitted a sick-call slip complaining of dizziness, falls, and headaches and requesting medication renewal and examination by a physician. On December 24, 2008, he filed another sick-call encounter form complaining of dizziness, falls, and the need to see a physician and obtain a "no work" status order. On December 29, 2008, P.A. Ford ordered that Tatum receive a bottom bunk, be placed on "no work" status and that he be handcuffed in the front with no "box" cuffing.

On January 26, 2009, Tatum's diuretic, HCTZ, was restarted to better control his high blood pressure. Paper No. 16, Exs. A & B. Defendant claims he continues to be monitored frequently for

---

[3] A notation in Dr. Mathis's September 3, 2008 physician's order summary observed that Tatum suffered from "sick sinus syndrome, possibly caused, certainly exacerbated by Atenolol." Paper No. 16, Ex. B at p. 66.

7

his high blood pressure and SSS and was seen by health care staff in the medical department or in the Chronic Care Clinic ("CCC") in March and April of 2009. Paper No. 16, Ex. B. His vital signs were taken and found to be within normal limits. On May 3, 2009, however, he was seen by medical personnel for a complaint of worsening dizziness with syncope (sudden loss of consciousness, more commonly known as a blackout or faint). The notations in the medical record incorrectly indicate that this was Tatum's first incident of dizziness since September of 2008. His physical examination was normal. It was further noted that Tatum had not kept up with his instructions for "hydration" and he again refused to consider the implantation of a pacemaker.

For his part, Tatum reiterates the claims raised in his Complaint stating that on September 3, 2008, two days after he was rushed to the hospital, physicians at PRMC determined that he had SSS. He asserts that Defendant CMS caused the SSS and did nothing to prevent it or treat it. Paper No. 21. He seemingly states that he has met the legal definition of medical malpractice and additionally asserts that he has proven "deliberate indifference" as staff should have know that the Atenolol was the cause of his symptoms and of his developing condition.[4]

2.    Analysis

This is a court of limited jurisdiction. In filing a 42 U.S.C. § 1983 Complaint, Tatum must demonstrate a constitutional right was violated.[5] Based upon the pleadings filed before the Court, the undersigned concludes that no Eighth Amendment violation has been demonstrated. An inmate claiming denial of medical care in violation of the Eighth Amendment must prove two essential elements. First, he must satisfy the "objective" element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

---

[4]    For the first time Tatum complains that CMS failed to forward medical records to PRMC. He

If this element is satisfied, he must then prove the subjective component of the standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. In addition to establishing that personnel acted with deliberate indifference to his serious medical needs, to succeed on a § 1983 damage claim for violation of Eighth Amendment, Tatum must show that he suffered from serious injury as result of Defendant's conduct. *See Lawrence v. Virginia Dep't of Corrections*, 308 F.Supp.2d 709, 720 (E. D. Va. 2004).

It is well settled law that a claimant may not recover damages against a municipality under 42 U.S.C. § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the Complaint names Correctional Medical Services, Inc. ("CMS") in the alleged denial of dental care solely upon vicarious liability, case law in this circuit is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin*

---

claims that CMS has "manufactured" documents.   Paper No. 21.

*v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

Tatum has multiple medical problems including hypertension. He was prescribed Atenolol, a beta blocker, to treat his high blood pressure. During periods when his hypertension was under control, his Atenolol dosage was decreased. His blood pressure was continuously monitored. Beginning in 2008, Tatum complained of dizziness, losing consciousness, and falling down. On each occasion when these complaints were raised, Tatum's blood pressure and heart rate and rhythm were tested and found to be within normal limits. He also received EKGs which, until September 1, 2008, proved normal. On September 1, 2008, however, his EKG was found to be abnormal and Tatum was diagnosed by a Maryland Eastern Shore hospital with SSS and syncope with symptomatic bradycardia. PRMC doctors recommended that Tatum receive a cardiac pacemaker to treat his SSS, but he refused the procedure and continues to do so. Within days of the diagnosis, Tatum's Atenolol regimen was discontinued as Dr. Mathis was of the opinion that Tatum had a sensitivity to the Atenolol and the drug had either caused or exacerbated the bradycardia. Tatum was placed on the calcium blocker Norvasc to control his high blood pressure.

While it is regrettable that Tatum developed his heart condition, the record shows that Defendant was not deliberately indifferent to issues involving Tatum's heart or to the administration of his medication. Tatum was frequently examined, monitored, and tested for his complaints by healthcare staff. They had no objective information of a medication reaction to a beta blocker causing or exacerbating his SSS and bradycardia, until he had an abnormal EKG in September 2008 and, for the first time, Tatum's atrial rate was found to be less than 60 beats per minute. Medical staff then proactively changed his hypertension medication, placed him on a "no work" status, and

---

[5] The Court has no jurisdiction over a medical negligence complaint in the absence of diverse parties.

modified his bunk arrangement. Tatum has refused to have a cardiac pacemaker implantation. There is a medical care notation that Tatum is not to be placed on beta blockers and he continues to be routinely monitored.

IV.     CONCLUSION

The undersigned finds that Plaintiff has failed to demonstrate an Eighth Amendment deprivation. For the aforementioned reasons, Defendant's motion for summary judgment is hereby granted. A separate Order follows.


Date: October 16, 2009                              _____/s/_____
                                                    William D. Quarles, Jr.
                                                    United States District Judge